UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

DAVID FRANKLIN COTNEY            )
Federal Registration No. 11196-002)
U. S. Penitentiary-Big Sandy      )
P. O. Box 2068                    )
Inez, KY  41224,                  )
              Defendant - Movant  )
                                  )
        -vs-                      ) CASE NO. 3:07-CV-0046-WHA-CSC
                                  ) (Cr. No. 3:03-CR-0078-WHA)
                                  )
UNITED STATES OF AMERICA,         )
              Respondent          )

## MOVANT'S REPLY TO UNITED STATES' RESPONSE TO §2255 MOTION

The defendant - movant, **DAVID FRANKLIN COTNEY**, pro se (hereinafter referred to as "Cotney"), respectfully represents unto this Honorable Court as follows as his **MOVANT'S REPLY TO UNITED STATES' RESPONSE TO §2255 MOTION** herein:

### PROCEDURAL POSTURE

Cotney filed a Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. §2255. The United States filed a general response placing the parties "at issue" on several questions. It is important that the United States has not sought summary judgment or dismissal pursuant to Rules 56 and 12(b)(6) of the Federal Rules of Civil Procedure. These pleadings place the parties in a position where an evidentiary hearing must be granted in accordance with 28 U.S.C. §2255.

It is true that Cotney asserts ineffective assistance of counsel with respect to each claim. To the extent that it was necessary for Cotney to prove plain error in the appellate court, such necessity is attributable to counsel's failure to preserve

Cotney's right to object to such errors in the trial proceedings and sentencing hearing. Appropriate objections would have made the errors subject to harmless error analysis rather than plain error scrutiny.

## CLAIMS FOR RELIEF

Cotney asserts that his proof of ineffective assistance of counsel satisfies the requisites of Strickland v. Washington, 466 U. S. 668 (1984). With respect to each claim, his counsel's performance was deficient, and the deficient performance prejudiced him severely. The identified acts or omissions of counsel fell below an objective standard of reasonableness, and counsel's alleged errors or omissions resulted in prejudice to such an extent that, without counsel's errors or omissions, there is a reasonable probability that the outcome of the proceeding would have been different. Yordan v. Dugger, 909 F.2d 474 (11th Cir. 1990).

Cotney's evidence, as supported by his affidavit attached hereto and filed herewith, overcomes the presumption that the conduct of counsel was reasonable. Cotney respectfully submits that he has borne the burden of rebutting the presumption of adequate performance. Grayson v. Thompson, 257 F.3d 1194 (11th Cir. 2001). But for counsel's unprofessional errors, the outcome of the proceeding would have been different, i.e. Cotney would not have pleaded guilty and would have insisted upon going to a trial.

a. **Claim 1:** The court can take judicial notice of the custom that exists throughout the system of federal courts in America that judges awarding downward departures for substantial assistance provided under U.S.S.G. §5K1.1 award a 25 to 50 percent reduction.

Based upon the equal protection provisions of the Fifth Amendment, Cotney is entitled to the same reduction as others in a similar situation receive. A three-level reduction in this case, based upon the nature of assistance rendered, is totally inadequate to compensate Cotney for his assistance.

Had Cotney's counsel argued that a 25 to 50 percent reduction was customary and applicable to Cotney, the court would have adhered to precedent and custom and awarded at least a 25 percent reduction. Any attorney that tries criminal cases in federal court is accustomed to all participants in the judicial process adhering to customs. The stigma that attaches to someone who renders substantial assistance is great, and leads to extreme danger in high security institutions at the hands of other inmates. In this case, Cotney subjected himself to the stigma and received a mere three-level reduction.

Counsel's performance definitely fell below an objective standard of reasonableness, and resulted in prejudice amounting to at least 22 percent of the entire sentence. A court is bound by custom to the same extent that he is bound by law based upon the equitable powers and duties of federal judges.

Cotney was the subject of great ire from the court and the United States, as well as all police officers involved, because of the necessity of killing a police canine in order to save his own life. This ire translated into a three-level reduction for substantial assistance and spilled over into other areas of the case.

b. **Claim 2:** It is glaringly apparent that the prosecutor's response wholly fails to address the distinction raised in Cotney's motion between "methamphetamine" and "methamphetamine actual." Instead, the prosecutor was obsessed with the sentencing ranges set

in statutes such as 21 U.S.C. §§841(b)(1)(A) and (b)(1)(B), knowing fully that <u>Blakely</u> v. <u>Washington</u>, accords defendants the right to be sentenced within guideline ranges unless the court documents why the sentence is reasonable even though it is outside the guideline ranges. The court purported to follow the guideline ranges in this instance.

Cotney clearly demonstrated in his motion that the court's reasoning to the effect that "that distinction is made in the guidelines at certain places...[t]his is not a case of methamphetamine mixture" is incorrect. Counsel violated the strictures of <u>Strickland</u> by failing to insist upon a plea bargain embracing the lesser included offense of 21 U.S.C. §841(b)(1)(B). The prejudice in counsel's failure to negotiate an appropriate plea and object to the use of "actual" methamphetamine amounts equates to a difference of six offense levels, which is a substantial sentence indeed. In the absence of counsel's failures asserted hereinabove, especially his failure to object and communicate with Cotney with respect to this question, Cotney would not have pleaded guilty and would have insisted upon a jury trial of the issues.

c. <u>Claim 3</u>: By his absolute reliance upon <u>United States</u> v. <u>Blaylock</u>, 275 F.3d 1030 (11th Cir. 2002), counsel obscures the argument of Cotney that the court was wrong in its delineation of "actual methamphetamine" and "methamphetamine mixture." This totally ignored the purport of the testimony of the government's expert, Ms. Kelly. The method under U.S.S.G. §2D1.11 is not more lenient when one considers the punishment for a mixed amount of methamphetamine. The method concerned is not the most "simply and direct" calculation of the base offense level based upon the testimony rendered and the

nature of the evidence. A level-32 is less than a level of 34, but if the court had adhered to the evidence and the guidlines, the base offense level for a mixture of methamphetamine would have been a level-26.

Counsel for the Government wholly fails to specifically address counsel's ineffective-assistance with respect to Claim 3. Counsel failed to object to the judge's surprise announcement that he was going to punish Cotney for the amount of pseudoephedrine in the mixture rather than the amount of methamphetamine that he conspired to possess for the violation of 21 U.S.C. §841(b)(A). He failed to communicate with Cotney and attempt to do anything about the use of U.S.S.G. §2D1.11. Cotney was prejudiced to the extent of six offense levels, and in the absence of counsel's deficient representation he would have insisted upon a jury trial and gone to trial in the matter.

    d. **Claim 4:** Counsel seeks to avoid this claim and asserts, "The Eleventh Circuit has previously ruled on this issue, finding that the facts in Cotney's case supported an enhancement for obstruction of justice." The Government misses the point, which is that counsel was ineffective with respect to his failure to present the documentary evidence submitted by Cotney with his motion. It is clear that counsel was deficient in his performance and that Cotney was sorely prejudiced by such deficient performance.

At issue was whether or not Cotney recognized that the persons who turned a dog loose upon him to bite him were police officers and failed to stop for them. The officers testified unequivocally that they were dressed in uniform at the time of the arrest and other events in question. The pictures submitted by Cotney with his

Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. §2255, taken at the time of the incident in dispute, totally contradict the officers' testimony and prove that Cotney was correct in his testimony, which the court, in fact, disbelieved during the sentencing hearing. These pictures change the entire character of Cotney's defense and place him in a different light. Cotney had a reasonable belief that the dog which attacked him and the persons with the dog were not related to the police.

Counsel had the subject pictures in his possession during the officer's testimony and Cotney's testimony, and neither presented the pictures as evidence nor cross-examined the officers based upon the perjury revealed by the picture. Hence, they were not available for appeal and the United States Court of Appeals for the Eleventh Circuit would clearly have ruled differently if it had been confronted with these photographs.

Counsel was deficient for failing to present the pictures as evidence and cross-examine the officers accordingly. The sentence was enhanced by three offense levels as a result of this deficient representation. If Cotney had known his sentence would have been enhanced based upon an obstruction of justice enhancement, he would have never pleaded guilty and would have insisted upon a jury trial in this matter.

e. **Claim 5:** Cotney argues in Claim 5 that the court relief upon nontestimonial, hearsay evidence adduced by Agent DeJohn to the effect that Cotney organized the laboratory and was to receive a majority of the methamphetamine to sell. Despite the inapplicability of the Confrontation Clause in the context of sentencing, Cotney's lawyer still failed to protect Cotney's interest with respect to

DeJohn's testimony. This testimony would have established that the hearsay testimony was weak and could not be deemed reliable. Counsel did not advance objections during the sentencing hearing and upon appeal.

Counsel was deficient in his representation with respect to the aggravating role enhancement. Cotney was prejudiced by this deficient conduct to the extent of three offense levels. In the absence of such deficient conduct and prejudice, Cotney would have chosen to refrain from plea bargaining and would have proceeded to trial in the matter.

  f. **Claim 6:** There is no doubt that the Government acted in bad faith and breached its plea agreement with Cotney with respect to the sentence to be imposed for the charge under 18 U.S.C. §924(c)(1). As averred in the affidavit attached hereto and filed herewith, Cotney refused to execute an agreement that called for a 10-year sentence, and the prosecutor was well aware of that. The Government agreed that there would be no enhancements and that Cotney would be sentenced to a term of imprisonment of five years for the weapons violation.

  The assertion of Cotney's lawyer that they read the agreement aloud to Cotney is preposterous. It would be an insult for someone to read the agreement aloud to Cotney, although a discussion of the agreement probably took place. Counsel says that he read the agreement to Cotney's father on the telephone, and Cotney probably listened. However, that does not get around the admission of counsel that Cotney refused initially to sign an agreement "with the ten (10) year minimum mandatory lanugage contained in the plea agreement

- 8 -

regarding the discharging of a weapon." The court must give some weight to Cotney's contentions in view of this affidavit. Both attorneys swore to the same information. If the Government did not breach its agreement, the only remaining conclusion is that both the Government and counsel agreed to trick Cotney into signing an agreement which omitted this information, knowing fully well that the Government was going to recommend the 10-year sentence and enhancements anyway.

Cotney did, in fact, admit that he discharged the shotgun he possessed. However, he did not do so intentionally in the commission of a felony because he was simply trying to defend himself against a canine that was trying to kill him.

Counsel was deficient in the representation he provided with respect to this issue. Since counsel adopts the position that he knew that the issue of the 10-year sentence for the firearms violation would be brought back up at sentencing, counsel had an obligation to explain this to Cotney, and he had an obligation to advise Cotney that the agreement envisioned by the Government had not changed simply by removal of certain language from the written agreement.

Cotney was prejudiced to the extent of five years imprisonment in addition to the five years he was told he would get when he succeeded in having the language of the agreement changed. In the absence of counsel's deficient representation, Cotney would have insisted upon pleading not guilty and being tried by a jury of his peers.

### **NECESSITY OF AN EVIDENTIARY HEARING**

There has never been a case in which an evidentiary hearing

is more appropriate. The parties are at issue on a number of claims and issues, and the disputes cannot be resolved by resort to the record and the evidence submitted by way of the Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. §2255 and the expanded record in the form of affidavits allowed by the court.

Title 28 U.S.C. §2255 states specifically as follows:
> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto...

In the current case, the motion and the files and records of the case do not conclusively show that Cotney is entitled to no relief. The expanded record reveals a dispute as to whether a custom exists within the federal judicial system under which a defendant is awarded a 25-50 percent reduction in his sentence for substantial assistance.

An evidentiary hearing is required to examine whether the distinction between actual methamphetamine and a methamphetamine mixture drawn by the court was erroneous. Cotney will state in an evidentiary hearing that any methamphetamine product is a mixture, and that the coconspirators planner to dilute whatever methamphetamine was produced.

The court needs to resolve the dispute created by Claim 3 as to the duration of the sentence if the court had sentenced Cotney correctly for a mixture of methamphetamine. There is an overall

issue of the effective assistance of counsel with respect to each of these claims. Both counsel say that they recall no surprise announcement by the trial court regarding punishing Cotney for pseudoephedrine rather than methamphetamine. There is a dispute regarding the impact of this announcement upon the propriety of the sentence and whether counsel should have objected.

There is a dispute in Claim 4. Cotney is certain that the officers were wearing plain clothes at the time of the arrest. There is no reason that the officers would have taken the pictures submitted by Cotney on the following day. There is a clear-cut issue before the court as to whether counsel should have insisted upon introduction of the pictures based upon Cotney's testimony. The photographs would have made Cotney's testimony immensely more believeable.

Claim 6 is highly in dispute based upon the expanded record. Cotney's lawyers admit that he refused to sign one version of a plea agreement based upon its stipulation that he would receive a 10-year sentence for the firearms violation. Cotney is under the impression that the removal of this language from the plea agreement made it impossible for the Government to procure a 10-year sentence for the charge. The court must resolve the voluntariness issue raised by these sharply conflicting facts. There is no doubt that Cotney was prejudiced because he was, in fact, sentenced to a term of imprisonment of 10 years as punishment for the firearms violation.

## CONCLUSIONS

The foregoing facts, law, and argument effectively rebut the response filed on behalf of the United States. Therefore, Cotney respectfully requests that this Honorable Court grant an evidentiary

hearing and grant his Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. §2255.

*[signature: David Franklin Cotney]*
DAVID FRANKLIN COTNEY, JR.
Pro Se

### CERTIFICATE OF SERVICE

I, DAVID FRANKLIN COTNEY, JR., **pro se**, do hereby certify that a true copy of the foregoing **MOVANT'S REPLY TO UNITED STATES' RESPONSE TO §2255 MOTION** was duly forwarded via U. S. Mail, first-class, postage pre-paid, to Todd A. Brown, Esquire, Assistant U. S. Attorney, P. O. Box 197, Montgomery, Alabama 36101-0197 this ____ day of March, 2007.

DAVID FRANKLIN COTNEY, JR.
Pro Se

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

RECEIVED
2007 MAR 12 A 9:46
____ P. HACKETT, CLK

DAVID FRANKLIN COTNEY,
    Defendant-Movant

-vs-

UNITED STATES OF AMERICA,
    Respondent

CASE NO. 3:07-CV-0046-WHA-CSC
(Cr. No. 3:03-CR-0075-WHA)

### UNSWORN AFFIDAVIT OF DAVID FRANKLIN COTNEY

I, David Franklin Cotney, pro-se, do hereby declare, certify, and affirm, under the penalty of perjury pursuant to 28 USC §1746, as follows:

1. I am a prisoner housed at the U.S. Penitentiary - Big Sandy, P.O. Box 2068, Inez, KY 41224.

2. I am writing and mailing this affidavit and the accompanying reply brief in the midst of an institutional lock-down which commenced on February 28, 2007. Thus, I have no way of making a copy for myself nor can I make a copy to send

to opposing counsel.

3. I re-assert my position that the officers were wearing plain clothes on the date of my arrest and that I did not know they were police officers.

4. My counsel had pictures made of the officers at the date and time of my arrest wearing plain clothes, but refused to introduce the pictures as evidence. I had a reasonable belief that the dog which bit me was not a police dog, but rather, was a wild dog.

5. If I had known my offense level would have been enhanced by three levels for obstruction of justice, I would have never pleaded guilty and would have insisted upon a jury trial.

6. I was never a leader of organizer in any conspiracy. My lawyer failed to protect my interest with respect to DeJohn's hearsay testimony.

7. If I had known that my sentence would have been enhanced for an alleged leadership role, I would have never pleaded guilty and would have insisted upon going to trial.

8. During plea-bargaining, I refused to sign an agreement calling for a 10-year sentence for violation of 18 U.S.C. §924(c)(1). This provision was removed and I was told that my sentence would be subject to no enhancements and that I would receive a five-year sentence for the firearms violation.

9. Counsel did not read the agreement aloud to me.

10. If I had known I would receive a 10-year sentence under 18 U.S.C. §924(c)(1) and enhancements to my sentence, I would have refused to plead guilty and would have insisted upon a jury trial in the current matter.

I, David Franklin Cotney, pro se, do hereby declare,

certify, and affirm, that the foregoing representations of fact, are true and correct to the best of my knowledge and belief.

*David Franklin Cotney*
DAVID FRANKLIN COTNEY

March 6, 2007

Clerk
U.S. District Court
Middle District of Alabama
P.O. Box 711
Montgomery, Alabama 36101-0711

RECEIVED
2007 MAR 12 A 9:45
DEBRA P. HACKETT, CLK

Re: Cotney v. United States
    Docket No's: 3:07-CV-0046-WHA-CSC
    Cr. No. 3:03-CR-0019-WHA

Dear Sir/Madam:

This institution commenced a lock-down on February 28, 2007, which is still ongoing. Thus, I was precluded from making copies of the enclosed reply brief and affidavit for both the prosecutor and me. I simply had to do the best I could.

I would greatly appreciate it if you would copy the enclosed documents and send one to me and one to the prosecutor. If you will bill me for these services, I will gladly pay.

Thank you for your assistance in this matter.

David Franklin Cotney

DAVID FRANKLIN COTNEY 11196-002
U.S. Penitentiary - Big Sandy
P.O. Box 2068
Inez, KY 41224

DECLARATION OF MAILING
PURSUANT TO 28 U.S.C. §1746

I, David Franklin Cotney, pro se, do hereby declare, certify, and affirm, pursuant to 28 U.S.C. §1746, under the penalty of perjury, that my institution was on lock-down commencing February 28, 2007; that on March 6, 2007, at about 8:00 PM, I handed the envelope containing the foregoing reply brief and affidavit, to an officer in charge of the lock-down for delivery to the U.S. Mail system, addressed to the Clerk and postage pre-paid; and that I have complied with all other requisites of the mailbox rule.

I, David Franklin Cotney, do hereby declare, certify, and affirm, pursuant to 28 U.S.C. §1746, under the penalty of perjury, that the foregoing representations of fact are true and correct to the best of my knowledge and belief.

EXECUTED March 6, 2007.

_David Franklin Cotney_
DAVID FRANKLIN COTNEY

EXECUTED March 6, 2007.